**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IVAN J. SMITH,**

    **Petitioner,**

    **v.**

**WARDEN, SOUTHEASTERN**
**CORRECTIONAL INSTITUTION,**

    **Respondent.**

      **Case No. 2:20-cv-1382**
      **Chief Judge Algenon L. Marbley**
      **Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties.  For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

## I.      FACTS AND PROCEDURAL HISTORY

Petitioner challenges his May 27, 2017 convictions after a jury trial in the Muskingum County Court of Common Pleas for possession of drugs, cultivation of marijuana, possession of criminal tools, and money laundering.  The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶4} On July 13, 2016, Muskingum County Sheriff's dispatch received a complaint about the odor of marijuana coming from the residence located at 128 Hamline Ave., Zanesville, Ohio. The complaint also stated that the occupants at the residence were trafficking in drugs.

> {¶5} Colleena Johnson ("Colleena") and Appellant lived at 128 Hamline Ave. 130 Hamline Ave. was vacant at the time. (Trial, Vol. I, p. 157, 159; Vol. II, p. 455). Their residence is a duplex with 130 Hamline Ave., wherein 128 is on the south side and 130 is on the north side. (T. at 157).

{¶6} In response to the complaint, officers approached the residence to conduct a "knock and talk". (T. at 152-53). Officers noticed the odor or raw marijuana, which became stronger when Colleena came out after the officers knocked. (T. at 155-56). Colleena refused to give consent for a search of the residence. Officers secured the residence while Detective Matt Wilhite ("Det. Wilhite") left to procure a search warrant. (T. at 156). Colleena, who was not permitted to re-enter the residence without being accompanied by an officer, left on foot. It took a little over an hour for Det. Wilhite to return with a signed search warrant.

{¶7} Additionally, officers received consent from Dan Reinstetle, the owner of the duplex, to search the vacant 130 Hamline Ave. residence to confirm the odor of marijuana was not coming from it. (T. at 159). Officers also found nine (9) marijuana plants outside, on the south side (128 side) of the duplex, in pots that resembled pots that were later discovered inside 128 Hamline Ave. (T. at 167). The marijuana plants outside had labels on them to identify their strand. (T. at 169).

{¶8} Inside 128 Hamline Ave., officers found Christmas tags that read "To Ivan, From Col", mason jars with labelling, and Ziploc vacuum sealed bags with handwriting that was similar to the handwriting on the labels on the marijuana plants outside. (T. at 170-71, 173). There was also marijuana residue on the bottom of the mason jars and the labels for other strands of marijuana. (T. at 171-72).

{¶9} Officers also found five (5) butane cans inside the residence, which Det. Wilhite testified were frequently used to process marijuana to manufacture hashish. (T. at 172). Hashish was also found. (T. at 467-69).

{¶10} During the search, officers also found duct tape that matched duct tape on the marijuana plants outside, as well as duct tape that would later be found in the basement and at a storage unit. (T. at 173-74).

{¶11} A book named Cannabis Indica was found next to a cedar chest in a room upstairs. (T. at 176). Inside that cedar chest were four (4) more mason jars with labels, vacuum sealed bags, and a plastic tote that had Appellant's fingerprint on it. (T. at 177, 392-94). There was a desk in the room that had mail and multiple documents in the name of Appellant. (T. at 83-84, 205). Officers also found a Styrofoam cup with methamphetamine inside of it. (T. at 180, 182, 301, 467-69).

{¶12} In a closet behind some clothes was a staircase that led to the attic, which had been secured by coat hanger wire. (T. at 184). The attic can only be accessed from 128 Hamline Ave., not from 130 Hamline Ave. (T. at 166, 269-70). In the attic, eighty-four (84) full plants, fresh, with wet and damp soil, were found, as well as a large, plastic, industrial grinder with ground-up marijuana inside, more mason jars, a vacuum sealer, and other dried marijuana were found. (T. at 185, 188-89, 317-18). Appellant's fingerprints were on the grinder. (T. at 189, 392-94). There was no lighting in the attic and the temperature was above 100 degrees. (T. at 185, 273).

{¶13} Det. Wilhite testified about his knowledge of marijuana and that marijuana plants cannot grow in a space of that temperature and with no light, concluding that the plants had to have recently been placed there. (T. at 185-86, 188, 273). Colleena would not have had time to move the plants to the attic. (T. at 276).

{¶14} In the basement, officers found three (3) constructed hydroponic grow rooms wrapped in heavy black plastic with reflective plastic on the inside, grow lights, hydroponic stems, and filters, all used to grow marijuana. (T. at 192). There were also hydroponic clay balls and bamboo sticks, which matched hydroponic clay balls and bamboo sticks that were found with the outside marijuana plants. (T. at 194). There was a box for grow lights with the name Howard Bailey on it, who previously worked at Iroc's Hair Design Studio ("Iroc's"), which is the barbershop business that Appellant owns, located at 125 State Street. (T. at 196, 253). There was blue rope and blue pulleys holding up the LED grow lights from the ceiling. (T. at 196). Howard Bailey's fingerprint was on one of the LED grow lights, which he testified he had previously sold to Appellant. (T. at 255, 299, 366, 369). There was also Appellant's yellow-hooded sweatshirt, which he had been seen wearing around town, and the matching pants were located in his vehicle parked outside. (T. at 197, 231). Finally, a bag of packaged (processed) marijuana was found inside the dryer. (T. at 414).

{¶15} Appellant's Ford Explorer was parked at 128 Hamline Ave. and was also searched. (T. at 229-31). Located in the vehicle was a blue pulley, a pair of yellow pants, Appellant's wallet and identification, credit cards, and numerous documents and receipts, including an electric bill for Iroc's, a Huntington Bank bill in the name of Appellant, and another Huntington Bank bill in the name of Ivan J. Smith dba Iroc's Hair Design Studios. (T. at 231-32, 236, 319-320).

{¶16} In the cedar chest was also a payment book/receipts for Five Star Store It in the name of Appellant and his company Iroc's. (T. at 203-04). That storage unit was rented in Appellant's name for Iroc's. (T. at 252-53, 409). A K9 alerted to the presence of narcotics in the storage unit that Appellant/Iroc's was renting. (T. at 332). A search of the storage unit revealed 2x4 framing, ventilation piping with heavy plastic stapled to it, vacuum sealed bags with similar writing as those found at 128 Hamline, reflective plastic, and hydroponic clay balls, all similar to those found at 128 Hamline Ave. (T. at 215-217, 221-223). There was also a hydroponic water pump system, further documents in the name of Appellant, heavy black plastic and duct tape similar to that found in the basement at 128 Hamline Ave., and a hair salon chair with marijuana residue on it. (T. at 223, 226). The receipt for Indoor Gardens found in the Ford Explorer led detectives to visit Indoor Gardens and retrieve the merchant copy which showed that Appellant purchased grow lights and other materials using his Huntington Bank business account card. (T. at 235, 248-252, 362-363).

{¶17} The scene was processed, evidence collected, and was sent away for testing and analysis. (T. at 254). The grinder, plastic bin, and lighting systems were

processed for fingerprints. (T. at 337-338, 346-347). Five (5) of the fingerprints came back identifying Appellant, one fingerprint belonged to Howard Bailey. Colleena's prints were excluded from being on the evidence. (T. at 392, 394).

{¶18} The marijuana was tested and weighed and came back with a combined weight of 1.28 kilograms, or 1,280 grams. (T. at 439, 445-446). The hashish was tested and weighed 13.05 grams, the methamphetamine was tested and weighed less than 0.10 grams. (T. at 467-469).

{¶19} During the search, Appellant called Detective Todd Kanavel. Appellant was upset and asking why they were searching the house. (T. at 415). Appellant called back asking if he needed to turn himself in, and while referring to the grow lights, stated "the stuff isn't even turned on". (T. at 416-17).

{¶20} On October 12, 2016, Appellant was indicted as follows:

Count 1: Possession of drugs (Marijuana), in violation of R.C. § 2925.11(A), a felony of the third degree,

Count 2: Cultivation of Marijuana, in violation of R.C. § 2925.04(A), a felony of the third degree, with a forfeiture specification;

Count 3: Possession of drugs (Hashish), in violation of R.C. § 2925.11(A), a felony of the fifth degree;

Count 4: Possession of drugs (Methamphetamine), in violation of R.C. § 2925.11(A), a felony of the fifth degree;

Count 5: Possession of criminal tools, in violation of R.C. § 2923.24(A), felony of the fifth degree;

Count 6: Money laundering, in violation of R.C. § 1315.55(A), a felony of the third degree, with a forfeiture specification.

{¶21} On January 31, 2017, Appellant filed a motion to suppress.

{¶22} On February 10, 2017, a hearing was held on Appellant's motion to suppress. The trial court denied the motion.

{¶23} On February 12, 2017, a jury trial commenced in this matter. One hour into voir dire, the trial was continued due to Appellant's wish to fire his counsel and Appellant's counsel moving the court to allow him to withdraw as counsel.

{¶24} Following deliberations, the jury found Appellant guilty on Counts One, Two, Three, Five and Six, and the forfeiture specifications.

{¶25} On June 14, 2017, a sentencing hearing was held. At said hearing, the trial court merged Counts One and Two for purposes of sentencing and sentenced Appellant to thirty (30) months on those counts, twelve (12) months on Count Three, twelve (12) months on Count Five and thirty (30) months on Count Six. Counts Two and Six were ordered to run consecutively to one another. Counts Three and Five were ordered to run concurrently with each other and with the sentence on Counts Two and Six, for an aggregate prison term of sixty (60) months. The applicable property, including real estate located 125 State Street, Zanesville, Ohio, was also ordered to be seized and forfeited to the State of Ohio and transferred to the County of Muskingum. The trial court waived the mandatory $5,000 fine.

{¶26} On July 10, 2017, Appellant appealed his conviction to this Court.

{¶27} By Opinion and Entry dated June 18, 2018, this Court affirmed the judgment of the Muskingum County Common Pleas Court, upholding the conviction.[1]

{¶28} On May 23, 2018, Appellant filed a Motion to Vacate Costs or in the Alternative for an Order Allowing a Monthly Partial Payment Plan.

{¶29} On June 29, 2018, the State filed opposition to Appellant's motion.

{¶30} On July 27, 2018, the trial court denied Appellant's motion.

{¶31} On August 6, 2018, Appellant filed a Notice of Appeal with the Ohio Supreme Court. On November 13, 2018, the Ohio Supreme Court declined to accept jurisdiction.

---

[1] Petitioner raised the following assignments of error on direct appeal:

{¶ 28} "I. IT IS STRUCTURAL ERROR TO DEPRIVE THE APPELLANT HIS PRESUMPTION OF INNOCENCE BY ALLOWING A WITNESS TO TESTIFY REGARDING PRIOR CONVICTIONS.

{¶ 29} "II. THE CONVICTION FOR THE POSSESSION CHARGES WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 30} "III. THE CONVICTION FOR MONEY LAUNDERING WAS NOT SUPPORTED BY THE MANFIEST [SIC] WEIGHT OF THE EVIDENCE.

{¶ 31} "IV. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A JURY VIEW."

*State v. Smith*, 5th Dist. No. CT2017-0044, 2018 WL 3046489, at *3-4 (Ohio Ct. App. June 18, 2018). On October 24, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Smith*, 153 Ohio St.3d 1504 (Ohio 2018).

{¶32} On September 21, 2018, Appellant filed an Application to Reopen his Appeal. On December 3, 2018, this Court denied the Application to Reopen.

{¶33} On October 15, 2018, Appellant filed a motion for a delayed appeal, which was granted by this Court. This appeal follows.

{¶34} On January 16, 2019, Appellant filed a Notice of Appeal with the Ohio Supreme Court. On April 18, 2019, the Ohio Supreme Court declined to accept jurisdiction.

{¶35} Appellant now appeals, raising the following assignment of error on appeal:

ASSIGNMENT OF ERROR

{¶36} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING SMITH'S MOTION TO WAIVE COURT COSTS OR TO ALLOW A MONTHLY PAYMENT PLAN, IN VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

*State v. Smith*, 5th Dist. No. CT2018-0063, 2019 WL 3404233, at *1-4 (Ohio Ct. App. July 26, 2019). On July 26, 2019, the appellate court affirmed the trial court's denial of Petitioner's motion to waive court costs. *Id.* Petitioner did not file an appeal.

On May 3, 2019, Petitioner filed a motion for leave to file a delayed motion for a new trial in the state trial court, asserting that newly discovered evidence, arguing that an affidavit from Colleena Johnson would have exonerated him and the trial court inconsistently imposed sentence. (ECF No. 11, PAGEID # 283.) On October 15, 2019, the trial court denied that motion. (PAGEID # 326.) On October 28, 2020, the appellate court dismissed Petitioner's appeal. *State v. Smith,* 5th Dist. No. CT2019-0077, 2020 WL 6342756 (Ohio Ct. App. Oct. 28, 2020).

On March 18, 2020, Petitioner filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. He asserts that he was denied a fair trial due to admission of prior acts evidence (claim one); that the evidence is constitutionally insufficient to sustain his conviction on

possession of drugs (claim two); that his conviction on money laundering is against the manifest weight of the evidence (claim three); that the trial court improperly denied his motion for a jury view (claim four); that he was denied the effective assistance of appellate counsel (claim five); that he was denied a fair trial due to prosecutorial misconduct (claim six); and that he was denied the effective assistance of trial counsel (claim seven).

## II.     STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case.  The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).

### III.    CLAIM ONE

Petitioner asserts that admission of testimony about his prior felony conviction denied him a fair trial.  This claim does not provide a basis for relief.  Generally, alleged errors in evidentiary rulings generally do not support a writ of habeas corpus.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citations omitted). To be entitled to habeas relief, a petitioner must demonstrate that the evidentiary ruling was "so fundamentally unfair that it rises to the level of a due-process violation."  *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  In order to establish a due process violation under the AEDPA rooted in an evidentiary ruling, the Court of Appeals for the Sixth Circuit typically has required a Supreme Court case establishing a due process right with regard to that specific kind of evidence.  *Id*. (citing *Maldonado v. Wilson*, 416 F.3d 470, 477 (6th Cir. 2005)).  However, there is no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.  *Bugh v. Mitchell*, 329 F.3d at 512.  Consequently, even if the trial court's admission of prior-bad-act evidence is viewed as "egregious error," the petitioner cannot meet the mandatory AEDPA showing that the Ohio Court of Appeals' decision rejecting his claim constituted an unreasonable application of Supreme Court caselaw.  *See Goldick v. Warden, Ross Corr. Inst*., No. 3:11-cv-00441, 2013 WL

2377638, at *9 (S.D. Ohio May 30, 2013) (citing *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011)).

Thus, claim one does not provide Petitioner a basis for relief.

## IV.    CLAIM THREE

Petitioner asserts that his conviction on money laundering was against the manifest weight of the evidence.  This claim likewise does not provide Petitioner the relief he seeks.  *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n.4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *see also Taylor v. Warden, Lebanon Corr. Inst*., No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (same) (citations omitted).

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982).  Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Claim three does not provide a basis for relief.

# V.    CLAIM TWO

Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction

for possession of drugs.  The state appellate court rejected this claim as follows:

> Appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to sufficiently prove the element of "possession," and the jury's verdict was against the sufficiency of the evidence. We disagree.
> {¶ 41} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:
>
>> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
>
> {¶ 42} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
>
> {¶ 43} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> {¶ 44} We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992). It is to be given the same weight and deference as direct evidence. *Jenks, supra*.
>
> {¶ 45} Appellant herein was found guilty of possession of marijuana and possession of hashish, both in violation of R.C. § 2925.11 which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant complains that the state did not prove "possession."

11

{¶ 46} R.C. § 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 47} Possession may be actual or constructive.

> "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Holman*, 5th Dist. Stark No. 2017CA00114, 2018–Ohio–1373, ¶ 25, citing *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247–248 (8th Dist. 1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005–Ohio–4714, ¶ 50; *State v. Moses*, 5th Dist. Stark No. 2003CA00384, 2004–Ohio–4943,¶ 9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002–Ohio–3034, ¶ 13, citing *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist.1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000–Ohio–1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365 (1982), *certiorari denied,* 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982).

{¶ 48} Here, the jury heard testimony as set forth above that Appellant possessed the drugs which were found at the premises and that Appellant was living at the premises.

{¶ 49} Upon review, we find sufficient evidence was presented to overcome the Crim.R. 29 challenge.

{¶ 50} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact, in this case, the jury. *State v. Jamison*, 49 Ohio St.3d

182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 51} Upon review, we find sufficient evidence to support the conclusion that Appellant was able to exercise dominion and control over the marijuana and hashish and therefore was in possession of drugs, and we do not find any manifest miscarriage of justice.

{¶ 52} Accordingly, Appellant's second assignment of error is overruled.

*State v. Smith*, 2018 WL 3046480, at *4-6.

The Fourteenth Amendment's Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson,* 443 U.S. at 324 n.16).

Again, when determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson,* 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear

13

in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson,* 443 U.S. at 326).

Further, federal habeas courts apply a "double layer" of deference to state court determinations of the sufficiency of the evidence. Deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle to meet. For the reasons discussed by the state appellate court, Petitioner has failed to do so here.

The record indicates that Petitioner lived at the house where police found multiple marijuana plants, paraphernalia, and hashish. His car was parked in the driveway when police executed the search warrant. Police found Petitioner's fingerprints inside and on various drug paraphernalia, as well as his clothes, mail, and other documents in his name. Construing this evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's conviction on possession of drugs.

Claim two is without merit.

## VI. CLAIM FIVE

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the evidence was constitutionally insufficient to

sustain his conviction on money laundering and police lacked probable cause for the search warrant. The state appellate court also rejected these claims. "We find Appellant's arguments unpersuasive and thus find that no genuine issue exists as to whether Appellant was denied the effective assistance of counsel on appeal." (*Judgment Entry*, ECF No. 11, PAGEID # 256.)

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 571 U.S. 1074 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107

S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* citing *Wilson* . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D.

Ohio March 6, 2013).

Applied here, the appellate court rejected Petitioner's claim that his money laundering

conviction was against the manifest weight of the evidence as follows:

{¶ 55} Appellant was convicted of money laundering, in violation of R.C. § 1315.55(A)(3) which states:

{¶ 56} "No person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity."

{¶ 57} At trial, the state presented evidence that Appellant's credit card was used to purchase fluorescent grow lights from Indoor Gardens, and that these lights were used to grow marijuana. Appellant's fingerprints were found on the light. Evidence was also presented that Appellant's business account was used to rent a storage unit to keep the grow materials. Further, the materials found in the grow rooms matched the materials found in the storage unit. These actions, taken together show that Appellant conducted and engaged in transactions for the purpose of carrying on a corrupt activity, that being the cultivation of marijuana and resulting possession of marijuana.

*State v. Smith*, 2018 WL 3046480, at *6.

This evidence, when viewed in the light most favorable to the prosecution, is

constitutionally sufficient to sustain Petitioner's conviction on money laundering.

The record further indicates that police obtained a search warrant after conducting a

"knock and talk" based on complaints about the odor of marijuana coming from Petitioner's

home.  (*Transcript*, ECF No. 11-1, PAGEID # 397-98.)  When Petitioner's roommate opened the

door, police detected a strong odor of marijuana.  (PAGEID # 400-01.)  Police also observed

grown marijuana plants on the south side of the residence.  (PAGEID # 404-05.)  "There is an

implied consent for the public, including police officers, to be able to approach an unobstructed

residence and knock on the front door."  *United States v. Rounsaville*, No. 1:17-cr-69-HSM-

SKL, 2018 WL 6177963, at * (E.D. Tenn. July 27, 2018).  "The Sixth Circuit recognizes the use

of knock and talk consensual encounters as a legitimate investigative technique at the home of a

suspect or an individual with information about an investigation."  *Id*. (quoting *United States v.

Chapman*, No. 1:08-CR-42, 2009 WL 301906, at *3 (E.D. Tenn. Feb. 6, 2009) (internal

quotation marks omitted) (quoting *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005)).

Further, "[a] police officer's detection of the odor of marijuana is sufficient to support probable

cause for a search of a residence."  *United States v. Fiek*, 54 F. Supp. 3d 841, 849 (W.D. Mich.

2014) (citing *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002).

> The Sixth Circuit [has] explained:
>
> This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search. *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir.1993). The same may be true when marijuana is smelled within a home. *See United States v. Tobin*, 923 F.2d 1506, 1512 & n. 4 (11th Cir. 1991); 2 LaFave, Search and Seizure § 3.6(b), at pp. 290–92; *see also United States v. Gonzalez,* No. 94–6503, 1995 WL 626286, at *3 (6th Cir. Oct. 24, 1995) (unpublished opinion) (per curium) (holding that smell of marijuana alone created probable cause for roadside search of a motor home).

*Id.* (quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)).  Thus, the record reflects

sufficient probable cause to support the search warrant.

 In view of the foregoing, Petitioner has failed to establish the ineffective assistance of

appellate counsel for failing to raise issues of insufficiency of the evidence and lack of probable

cause for the search warrant.

 Claim five is without merit.

## VII.    PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the

Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

habeas corpus.  28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to

protect the constitutional rights of criminal defendants, and in order to prevent needless friction

between the state and federal courts, a state criminal defendant with federal constitutional claims

is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).

If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition

is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4,

6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971).  Where a

petitioner has failed to exhaust claims but would find those claims barred if later presented to the

state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v.

Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person

convicted of a crime in a state court fails (for whatever reason) to present a particular claim to

the highest court of the State so that the State has a fair chance to correct any errors made in the

course of the trial or the appeal before a federal court intervenes in the state criminal process.

This "requires the petitioner to present 'the same claim under the same theory' to the state courts

before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir.

2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly

presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives

the state courts a fair opportunity to rule on the federal law claims being asserted.  That means

that if the claims are not presented to the state courts in the way in which state law requires, and

the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin*, 785 F.2d at 138.  Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error.  *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective

assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)).  That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000).  The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### Application

In claim four, Petitioner complains that the trial court improperly denied his request for a jury view.  Petitioner failed to raise this claim in the Ohio Supreme Court.  (*See Memorandum in Support of Jurisdiction*, ECF No. 11, PAGEID # 197.)  Further, he may now no longer do so, by application of Ohio's doctrine of *res judicata*.  *See Williams v. Mitchell*, 792 F.3d 606. 613 (6th Cir. 2015) (holding that, to avoid a procedural default, petitioner must exhaust all state-court remedies by fairly presenting claim to the state court of appeals and state supreme court) (citations omitted); *Sturm v. Darnell*, No. 2:10-cv-00247, 2012 WL 220211, at *15 (S.D. Ohio Jan. 25, 2012) (citations omitted) (petitioner procedurally defaulted his claim of ineffective assistance by failing to raise it in the Ohio Supreme Court); *Hemphill v. Hudson*, No. 1:09-cv-009, 2009 WL 1107890, at *2 (N.D. Ohio Apr. 23, 2009) (petitioner procedurally defaulted claim of ineffective assistance of appellate counsel procedurally defaulted where he failed to raise it in the Ohio Supreme Court).

In claim six, Petitioner asserts that the prosecutor improperly obstructed communication between Colleena Johnson and defense counsel.  In claim seven, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney conspired to assist the prosecutor in denying Petitioner access to a potential defense witness.  (*Petition,* ECF No. 1,

PAGEID # 20.) Petitioner never presented a claim of prosecutorial misconduct to the state courts. He first attempted to raise this claim of ineffective assistance of trial counsel in his delayed motion for a new trial. The appellate court refused to address the merits of that claim, however, as untimely and barred under Ohio's doctrine of *res judicata*:

> {¶31} In Appellant's First Assignment of Error, Appellant argues the trial court erred in denying Appellant's Motion for Leave to File a Delayed Motion for New Trial, and that Appellant's trial counsel was ineffective when he failed to subpoena Colleena Johnson, Patrolman Swingle, and Curtis Federal Supervision Officer Joe Moore. We disagree.
>
>                    \*\*\*
>
> {¶34} The verdict in Appellant's case was rendered on May 24, 2017, but his motion was not filed until May 3, 2019. "Because appellant's motion was filed well outside the 120-day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, 68 N.E.3d 381, ¶17. To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discerning the evidence within the 120 days. *Id*. A party is "unavoidably prevented" from filing a motion for a new trial if they had no knowledge of the ground supporting the motion and could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence." *Id*. quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859, 865 (10th Dist. 1984).
>
> {¶35} Appellant's proof must be more than conclusory allegations. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶9. The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶11. Clear and convincing proof is that "which will produce in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." *Schiebel, supra* at 74.
>
> {¶36} The "unavoidably prevented" requirement in Crim.R. 33 mirrors the "unavoidably prevented" requirement in R.C. 2953.23. *Thornton* at ¶47. "The phrase 'unavoidably prevented' means that a defendant was both unaware of the facts and was unable to learn of them through reasonable diligence." *Id*.

{¶37} Thus, the central inquiry in Appellant's motion for leave to file a motion for a new trial is whether he was unaware of the facts disclosed by the evidence and whether he was unavoidably prevented from obtaining that information through reasonable diligence.

{¶38} The trial court correctly points out Appellant did not discover any new evidence. While the affidavit itself did not exist before trial, the evidence, that he did not reside at 128 Hamline Avenue and that he did not own the contraband found there at the time of trial, and existence of the witness, Ms. Johnson, was known at the time of the trial. As such, Appellant was not unavoidably prevented from discovering this evidence. Therefore, the trial court did not abuse its discretion in denying Appellant's motion without conducting an evidentiary hearing.

{¶39} Under his first Assignment of Error, Appellant also argues his trial counsel was rendered ineffective when he failed to subpoena Colleena Johnson, Patrolman Swingle, and Federal Supervision Officer Joe Moore, and add them to the defense witness list.

{¶40} Appellant has previously filed an appeal related to his conviction in 2017 and now points to an alleged error by citing the record of the proceedings before the trial court that his counsel did not call Ms. Johnson, Patrolman Swingle, or Federal Supervision Officer Joe Moore as witnesses. These facts raise the issue of the applicability of the doctrine of res judicata.

{¶41} The doctrine of res judicata, "serves to preclude a defendant who has had his day in court from seeking a second on that same issue." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶18. Therefore, "any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." I*d*. at ¶16. As Appellant failed to raise the ineffective assistance of counsel argument as part of his direct appeal, the argument is barred by the doctrine of res judicata, and he cannot now raise it on appeal.

{¶42} Accordingly, we find the trial court did not abuse its discretion in denying Appellant's Motion for Leave to File a Motion for New Trial without an evidentiary hearing.

*State v. Smith*, 2020 WL 6342756, at *5-6.  Petitioner has thereby committed a procedural default.  *See Fetherolf v. Warden, Chillicothe Corr. Inst.*, No. 19-cv-001681, 2020 WL 605928, at *9 (S.D. Ohio Feb. 7, 2020) (citing *Petrone v. Bunting*, No. 5:13-cv-02187, 2015 WL 9918661, at *9-10 (N.D. Ohio Dec. 10, 2015)).

Petitioner may still obtain review of these claims on the merits, if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004).  Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).  Further, attorney error in proceedings wherein there is no right to counsel – such as in the filing of a motion for a discretionary appeal with the Ohio Supreme Court – cannot serve as cause for a procedural default.  *See McClain v. Kelly*, 631 F. App'x 422, 429 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (The right to counsel extends to the first appeal of right and no further).

Petitioner has failed to establish cause for his procedural defaults.

## VIII.  DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Elizabeth A. Preston Deavers*_____
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE